IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**BRAXTON MINERALS III, LLC et al.,**

    Plaintiffs,

  v.                                          CIVIL NO. 1:21-CV-119
                                                              (KLEEH)

**ANTERO RESOURCES CORPORATION,**

    Defendant.

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART MOTION TO STRIKE AND/OR DISMISS,
STAYING DISCOVERY ORDERS, AND DENYING OBJECTIONS AS MOOT**

Pending before the Court is a motion to strike the class allegations and/or dismiss the fourth amended complaint. For the reasons discussed herein, the motion is **GRANTED IN PART** and **DENIED IN PART**.

**I.    BACKGROUND AND PROCEDURAL HISTORY**

Plaintiffs Braxton Minerals III, LLC, Steven Crowe, Deborah Crowe, and JJGLG Properties, LLC ("Plaintiffs") bring this action against Defendant Antero Resources Corporation ("Antero"). Plaintiffs allege that they are parties to oil and gas leases with Antero and that they, along with members of the proposed class, have been underpaid by Antero under the terms of the leases.

Plaintiffs filed the original complaint on August 25, 2021. See ECF No. 1. On September 15, 2021, the Court stayed the case pending resolution of the appeal in Corder v. Antero Resources

Case 1:21-cv-00119-TSK   Document 133   Filed 09/26/25   Page 2 of 20   PageID #: 2161

BRAXTON MINERALS V. ANTERO                                    1:21-CV-119

MEMORANDUM OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART MOTION TO STRIKE AND/OR DISMISS,
STAYING DISCOVERY ORDERS, AND DENYING OBJECTIONS AS MOOT

Corp., No. 21-1715 (4th Cir.).  See ECF No. 14.  On February 1, 2023, the stay was lifted.  See ECF No 18.  On September 27, 2023, the Court denied a motion to consolidate the case with two other pending cases: Goodno et al. v. Antero, 5:20cv100, and Wright et al. v. Antero, 1:20cv222.  See ECF No. 51.  After multiple amended complaints and discovery disputes, Plaintiffs filed the fourth amended complaint on April 4, 2025.  See ECF No. 127.  They bring only one cause of action: breach of contract.  See id.

In the fourth amended complaint, Plaintiffs seek to certify the following class:

> Persons and entities, including their respective successors and assigns, to whom Antero, at any time since August 25, 2011, has paid royalties on the sale of natural gas products, including natural gas liquids, under oil and gas leases covering wells located in the State of West Virginia.  ("Class Leases").
>
> Excluded from the Class are: (1) agencies of the United States of America; (2) publicly traded oil and gas exploration companies; (3) Antero, its current officers and employees; (4) any person whose only royalty underpayment claims against Antero are subject to a binding arbitration provision that is set forth in the oil and gas lease between such person and Antero; (5) any person who is or has been paid royalties by Antero only under a lease which has been identified and included as a class lease which meets the Class definition set forth in the March 23, 2020 class certification order in Romeo, et al., v. Antero Resources Corporation, civil action no.

> 1:17-cv-88, U.S. Dist. Ct. N.D. W. Va.; (6) any person who has been paid royalties by Antero only under a lease which expressly provides each of the following: (a) the lessor shall bear some part of the costs incurred between the wellhead and the point of sale; (b) identifies with particularity the specific deductions the lessee may take in its calculation of the lessor's royalties; and (c) provides for the method of calculating the monetary amount to be deducted from the lessor's royalty for post-production costs;[1] and (7) any person or entity to whom Antero is obligated to pay royalties only under a flat rate lease.

Fourth Am. Compl., ECF No. 127, at ¶ 1.  Plaintiffs also propose an alternative class, which is not relevant for purposes of deciding this motion.

## II.  STANDARDS OF REVIEW

### Rule 12(b)(6)

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows a defendant to move for dismissal upon the ground that a complaint

---

[1] Compare Fourth Am. Compl., ECF No. 127, at ¶ 1 (excluding "any person who has been paid royalties by Antero only under a lease which expressly provides each of the following: (a) the lessor shall bear some part of the costs incurred between the wellhead and the point of sale; (b) identifies with particularity the specific deductions the lessee may take in its calculation of the lessor's royalties; and (c) provides for the method of calculating the monetary amount to be deducted from the lessor's royalty for post-production costs"), with Syl. Pt. 10, Estate of Tawney v. Columbia Nat. Res., LLC, 633 S.E.2d 22 (W. Va. 2006) ("Language in an oil and gas lease that is intended to allocate between the lessor and lessee the costs of marketing the product and transporting it to the point of sale must expressly provide that the lessor shall bear some part of the costs incurred between the wellhead and the point of sale, identify with particularity the specific deductions the lessee intends to take from the lessor's royalty (usually 1/8), and indicate the method of calculating the amount to be deducted from the royalty for such postproduction costs.").

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART MOTION TO STRIKE AND/OR DISMISS,
STAYING DISCOVERY ORDERS, AND DENYING OBJECTIONS AS MOOT**

does not "state a claim upon which relief can be granted." In ruling on a 12(b)(6) motion to dismiss, a court "must accept as true all of the factual allegations contained in the complaint." Anderson v. Sara Lee Corp., 508 F.3d 181, 188 (4th Cir. 2007) (citations omitted). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986) (citation omitted).

A court should dismiss a complaint if it does not contain "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). Plausibility exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation omitted). A motion to dismiss "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992) (citation omitted). Dismissal is appropriate only if "it appears to a certainty that the plaintiff would be entitled to no relief under any state of facts which could be proven in support of its claim." Johnson v. Mueller, 415 F.2d 354, 355 (4th Cir. 1969) (citation omitted).

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART MOTION TO STRIKE AND/OR DISMISS,
STAYING DISCOVERY ORDERS, AND DENYING OBJECTIONS AS MOOT**

**Rule 12(f)**

Rule 12(f) of the Federal Rules of Civil Procedure provides a district court with the authority to strike "an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." A motion to strike, however, is "generally viewed with disfavor because striking a portion of a pleading is a drastic remedy and because it is often sought by the movant simply as a dilatory tactic." Waste Mgmt. Holdings, Inc. v. Gilmore, 252 F.3d 316, 347 (4th Cir. 2001) (citation and internal quotation marks omitted).

**III. DISCUSSION**

Pursuant to Rule 12(b)(6), Antero argues that the Court should dismiss the breach of contract claim because Plaintiffs fail to identify the specific terms of the leases allegedly breached by Antero. In any event, Antero argues that the Court should dismiss any claims with respect to the Davis Lease because Plaintiffs fail to identify and plead the existence of a modification of the royalty payment obligations thereunder. Additionally, pursuant to Rule 12(f), Antero argues that the Court should strike the proposed class, asserting that it is facially flawed because it is impossible to ascertain class membership using objective terms without an individualized determination of lease language. The

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART MOTION TO STRIKE AND/OR DISMISS,
STAYING DISCOVERY ORDERS, AND DENYING OBJECTIONS AS MOOT**

Court agrees with Antero regarding the motion to strike, and it partially agrees with Antero regarding the motion to dismiss.

    **A.   Motion to Dismiss**

In West Virginia, to plead a breach of contract claim, a plaintiff must plead that (1) a contract exists between the parties, (2) a defendant failed to comply with a term in the contract, and (3) damage arose from the breach. See Patrick v. PHH Mortg. Corp., 937 F.Supp.2d 773, 792 (N.D.W. Va. 2013). As recently as June 11, 2025, the Supreme Court of Appeals of West Virginia affirmed and expanded upon certain principles at issue in this case:

> 2. "If an oil and gas lease provides for a royalty based on proceeds received by the lessee, unless the lease provides otherwise, the lessee must bear all costs incurred in exploring for, producing, marketing, and transporting the product to the point of sale." Syl. Pt. 4, Wellman v. Energy Res., Inc., 210 W. Va. 200, 557 S.E.2d 254 (2001).
>
> 3. Except as may be specifically provided by the parties' agreement, where an oil and gas lease contains an express or implied duty to market, the requirements of Wellman v. Energy Resources, Inc., 210 W. Va. 200, 557 S.E.2d 254 (2001), and Estate of Tawney v. Columbia Natural Resources, L.L.C., 219 W. Va. 266, 633 S.E.2d 22 (2006), extend to the point of sale, not just to the point of marketability or to the first available market.

4. Except as may be specifically provided by the parties' agreement, royalties are payable to the mineral owner/lessor not only from the producer/lessee's sale of wet gas and residue gas but also from the lessee's sale of any byproducts of the wet gas such as natural gas liquids.

5. "'The general rule as to oil and gas leases is that such contracts will generally be liberally construed in favor of the lessor, and strictly as against the lessee.' Syllabus Point 1, Martin v. Consolidated Coal & Oil Corp., 101 W.Va. 721, 133 S.E. 626 (1926)." Syl. Pt. 7, Est. of Tawney, 219 W. Va. 266, 633 S.E.2d 22 (2006).

. . .

7. "Language in an oil and gas lease that is intended to allocate between the lessor and lessee the costs of marketing the product and transporting it to the point of sale must expressly provide that the lessor shall bear some part of the costs incurred between the wellhead and the point of sale, identify with particularity the specific deductions the lessee intends to take from the lessor's royalty (usually 1/8), and indicate the method of calculating the amount to be deducted from the royalty for such post-production costs." Syl. Pt. 10, Estate of Tawney v. Columbia Nat. Res. L.L.C., 219 W. Va. 266, 633 S.E.2d 22 (2006).

8. Absent express language in a gas lease sufficient to satisfy the requirements set forth in syllabus point ten of Estate of Tawney v. Columbia Natural Resources, L.L.C., 219 W. Va. 266, 633 S.E.2d 22 (2006), a producer/lessee may not deduct from a mineral owner/lessor's royalties a proportionate share of the costs incurred in processing,

Case 1:21-cv-00119-TSK   Document 133   Filed 09/26/25   Page 8 of 20  PageID #: 2167
BRAXTON MINERALS V. ANTERO                                    1:21-CV-119

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART MOTION TO STRIKE AND/OR DISMISS,
STAYING DISCOVERY ORDERS, AND DENYING OBJECTIONS AS MOOT**

fractionating, and transporting residue gas and natural gas liquids to the point of sale.

Syllabus, Romeo v. Antero Res. Corp., 917 S.E.2d 26 (W. Va. 2025).

Antero argues that the Court should dismiss Plaintiffs' breach of contract claim because Plaintiffs have not identified a contractual provision that Antero purportedly breached. It argues that Plaintiffs "ignore the language of the leases entirely," do not differentiate between the leases, and then allege in a generalized manner that Antero failed to pay. Plaintiffs assert that they have sufficiently pled the elements of a breach of contract.

The Court agrees with Plaintiffs' position. The fourth amended complaint alleges facts demonstrating that Antero breached its royalty payment obligations to Plaintiffs pursuant to the leases between Plaintiffs and Antero. It identifies the applicable royalty provision that Antero allegedly breached. See Fourth Am. Compl., ECF No. 127, at ¶¶ 22, 34, 44, 50, 57, 75, 89, 101, 111, 126-127, 135, 143, 173, 179, 193, 206, 218, 229. It alleges that since August 25, 2011, Antero has paid royalties to Plaintiffs on residue gas produced and sold from wells subject to the leases and on natural gas liquid products produced from wells by Antero, including ethane, propane, normal butane, iso-butane, and natural

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART MOTION TO STRIKE AND/OR DISMISS,
STAYING DISCOVERY ORDERS, AND DENYING OBJECTIONS AS MOOT**

gasoline. Id. ¶ 237. It alleges that under West Virginia law, Antero has been required to bear all costs incurred in marketing and transporting the residue gas and natural gas liquids to the point of sale, unless the oil and gas lease provides otherwise. Id. ¶ 238. It alleges that under the applicable natural gas royalty provisions in the leases, Antero has been obligated to pay Plaintiffs royalties based upon prices received by Antero on its sale of residue gas and natural gas liquid products at the point of sale, without deduction of post-production costs, pursuant to decisions by the Supreme Court of Appeals of West Virginia in Wellman, 557 S.E.2d 254, and Tawney, 633 S.E.2d 22. Id. ¶ 239.

The fourth amended complaint alleges that Antero has consistently underpaid the royalties owed to Plaintiffs by (a) failing to pay royalties based upon the sales prices received on Antero's sales of residue gas at the point of sale which were obtained from wells subject to the leases; (b) failing to pay royalties based upon the sales prices received at the point of sale of the natural gas liquid products which were obtained from the wells subject to the leases; (c) improperly deducting from the sales prices received on the sale of residue gas and the natural gas liquid products various post-production costs and expenses, including, without limitation, expenses for treating, compression,

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART MOTION TO STRIKE AND/OR DISMISS,
STAYING DISCOVERY ORDERS, AND DENYING OBJECTIONS AS MOOT**

---

fuel, dehydration, gathering, transportation to the point of sale, processing, fractionation, and other expenses incurred; and (d) improperly taking substantial non-disclosed deductions from the selling price of natural gas liquid products in the calculation of royalties, by using what is commonly referred to as the shrink value method, which incorrectly calculates the royalties paid on natural gas liquid products by multiplying the volume of natural gas liquids sold by the selling price of residue gas. Id. ¶ 241. For these reasons, the Court finds that, with the exception of the Davis Lease, discussed below, Plaintiffs have stated a claim for breach of contract, and Antero's motion is denied in this respect.

In the Court's *Order Denying Motion to Dismiss and Granting Leave to Amend*, the Court wrote,

> This Court has recognized that to plead a breach of contract claim, a plaintiff must allege sufficient facts to identify and establish its interest in the contracts upon which the breach of contract is premised. See Langford v. Antero Res. Corp., No. 1:19cv178, 2020 WL 608285, at *3 (N.D.W. Va. Feb. 7, 2020) (requiring plaintiffs to amend their complaint because they "fail[ed] to adequately identify their oil and gas interests" and noting that the complaint "fail[ed] to allege how Antero even acquired its alleged interests, if any, in the subject leases"); Packard v. Antero Res. Corp., No. 1:18cv04, 2018 WL 2348398, at *5 (N.D.W. Va. May 23, 2018) (noting that the Court previously granted plaintiffs leave to amend the complaint to "explain[] how they

Case 1:21-cv-00119-TSK   Document 133   Filed 09/26/25   Page 11 of 20   PageID #: 2170

BRAXTON MINERALS V. ANTERO                                            1:21-CV-119

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART MOTION TO STRIKE AND/OR DISMISS,
STAYING DISCOVERY ORDERS, AND DENYING OBJECTIONS AS MOOT**

>       acquired an interest in the property, as well
>       as how Antero became assignee of the lessee's
>       interests under the lease agreements").

ECF No. 126 at 3-4. The Court, finding that Plaintiffs had not properly pled a chain of title for each of the leases, granted Plaintiffs leave to file a fourth amended complaint and rectify the deficiencies. Now that the fourth amended complaint has been filed, Antero argues that the Court should dismiss Plaintiffs' claims with respect to the Davis Lease because the same issues remain. Specifically, Antero argues that Plaintiffs fail to identify or allege that the royalty provision of the Davis Lease was modified. Antero argues that as a matter of public record, the Davis Lease is subject to the "Settlement Option A" lease modification approved by this Court in another case. See Exh. 1 to Mot., ECF No. 129-2. In the fourth amended complaint, however, Plaintiffs merely allege that Braxton Minerals III is a successor in interest of Jerry L. Davis. See Fourth Am. Compl., ECF No. 127, at ¶¶ 174-75. Antero argues that by failing to identify and allege that the royalty payment obligations of the Davis Lease were modified by Settlement Option A, Plaintiffs have failed to plead the existence of a complete contract between Braxton Minerals III and Antero. In response, Plaintiffs assert that Settlement Option A, even if it was executed by one of the Davis Lease lessors,

Case 1:21-cv-00119-TSK   Document 133   Filed 09/26/25   Page 12 of 20   PageID #: 2171

BRAXTON MINERALS V. ANTERO                                    1:21-CV-119

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART MOTION TO STRIKE AND/OR DISMISS,
STAYING DISCOVERY ORDERS, AND DENYING OBJECTIONS AS MOOT**

did not modify the extent of the lessee's royalty payment obligations under the applicable royalty provision in the Davis Lease. Plaintiffs argue that under the applicable royalty provision in the Davis Lease, the lessee was obligated to pay the Davis Lease lessors royalties based upon the prices received on the lessee's sale of natural gas products at the point of sale.

For the same reasons discussed in the *Order Denying Motion to Dismiss and Granting Leave to Amend* [ECF No. 126], the Court finds that Braxton Minerals III's interest in the Davis Lease remains insufficiently pled. Accordingly, Antero's motion to dismiss is granted in this respect, and any claim with respect to the Davis Lease is dismissed with prejudice.

B.  **Motion to Strike**

"The party seeking class certification bears the burden of proof." Lienhart v. Dryvit Sys., Inc., 255 F.3d 138, 146 (4th Cir. 2001) (citation omitted). The United States Court of Appeals for the Fourth Circuit has "repeatedly recognized that Rule 23 contains an implicit threshold requirement that the members of a proposed class be 'readily identifiable,'" which other courts have described as an "ascertainability" requirement. EQT Prod. Co. v. Adair, 764 F.3d 347, 358 (4th Cir. 2014) (citations omitted). "A class cannot be certified unless a court can readily identify the

Case 1:21-cv-00119-TSK   Document 133   Filed 09/26/25   Page 13 of 20   PageID #: 2172

BRAXTON MINERALS V. ANTERO                                    1:21-CV-119

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART MOTION TO STRIKE AND/OR DISMISS,
STAYING DISCOVERY ORDERS, AND DENYING OBJECTIONS AS MOOT**

class members in reference to objective criteria." Id. (citation omitted). "If class members are impossible to identify without extensive and individualized fact-finding or mini-trials, then a class action is inappropriate." Id. (citations and internal punctuation altered).

In Paulino, this Court was asked to certify a class comprised of "[a]ll former employees of Dollar General stores located in West Virginia who, according to Dollar General's records, were involuntarily terminated from employment on or after July 10, 2005 and who were not paid their final wages within 72 hours of termination." Paulino v. Dollar Gen. Corp., No. 3:12-CV-75, 2014 WL 1875326, at *2 (N.D.W. Va. 2014). The Court did not certify the class, explaining that it "would be required to conduct an individualized inquiry on the merits to determine whether a person qualifies as a member of the class, resulting in a determination of whether the person has a valid claim." Id. at *4.

As discussed above, a motion to strike is viewed with disfavor. See Gilmore, 252 F.3d at 347. Even more disfavored are motions to strike class allegations:

> A motion to strike class allegations under Rule 12(f) is even more disfavored because it requires a reviewing court to preemptively terminate the class aspects of . . . litigation, solely on the basis of

> what is alleged in the complaint, and before plaintiffs are permitted to complete the discovery to which they would otherwise be entitled on questions relevant to class certification.

Blagman v. Apple Inc., No. 12 Civ. 5453, 2013 WL 2181709, at *2 (S.D.N.Y. May 20, 2013) (citation omitted). Still, "[w]here the inability to maintain the suit as a class action is apparent from the face of the complaint, a court may dismiss the class allegations on the pleadings." Cornette v. Jenny Garton Ins. Agency, Inc., No. 2:10-CV-60, 2010 WL 2196533, at *2 (N.D.W. Va. May 27, 2010) (citation omitted).

Antero argues that the Court should strike the proposed class, asserting that it is facially flawed because it is impossible to ascertain class membership using objective terms without an individualized determination of lease language. Plaintiffs argue that the proposed class is ascertainable and that this Court and others have certified classes with similar language.

The Court finds that the proposed class, on its face, is not readily identifiable. Plaintiffs' proposed class excludes royalty owners whose leases satisfy the requirements of Wellman and Tawney. See supra note 1. The Supreme Court of Appeals of West Virginia has previously declined to decide what level of lease specificity is required to satisfy Tawney, noting that the determination "is

14

Case 1:21-cv-00119-TSK    Document 133    Filed 09/26/25    Page 15 of 20  PageID #: 2174
BRAXTON MINERALS V. ANTERO                                          1:21-CV-119

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART MOTION TO STRIKE AND/OR DISMISS,
STAYING DISCOVERY ORDERS, AND DENYING OBJECTIONS AS MOOT**

a matter of contract interpretation, and will necessarily hinge upon the individual contract at issue."[2]  SWN Prod. Co., LLC v. Kellam, 875 S.E.2d 216, 227 (W. Va. 2022).  Accordingly, determining whether a royalty owner qualifies for class membership in this case would require the Court to conduct an individualized legal analysis for over 66,000 leases.[3]

Plaintiffs rely on Glover v. EQT Corp., in which the United States Court of Appeals for the Fourth Circuit affirmed the district court's class certification for the breach of contract claim.  No. 23-2204, 2025 WL 2405514 (4th Cir. Aug. 20, 2025). The breach of contract certified class included the following:

> All royalty owners who were paid royalties by EQT between January 1, 2012 and February 28, 2021 pursuant to leases for wells located in West Virginia in Marshall County, Wetzel County, Tyler County, Doddridge County, or Ritchie County which contain the lease language set forth in Exhibit 1.  Excluded from the Class are: (1) EQT and its corporate affiliates, and their current officers and employees, together with any oil and gas interest owned by any Defendants; (2) any oil and gas interest owned by any federal, state or municipal governmental entity; (3) agencies, departments, or instrumentalities of the United States of America; (4) publicly

---

[2] In its order denying the motion for consolidation, this Court recognized that because each plaintiff presented different leases to interpret, the in-depth legal inquiry necessary for every lease weighed against consolidation.  See ECF No. 51 at 18.
[3] As of 2021, Antero operated approximately 66,000 leases in West Virginia, and the number of leases has grown since then.  See Memo., ECF No. 129-1, at 2 n.1.

Case 1:21-cv-00119-TSK   Document 133   Filed 09/26/25   Page 16 of 20   PageID #: 2175

BRAXTON MINERALS V. ANTERO                                    1:21-CV-119

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART MOTION TO STRIKE AND/OR DISMISS,
STAYING DISCOVERY ORDERS, AND DENYING OBJECTIONS AS MOOT**

> traded oil and gas exploration companies; (5) any owner of a working interest in the wells identified in the class definition; (6) persons and entities who were members of the class action settlement in Kay Company, LLC v. EQT Production Company, Civil Action No. 1:13-CV-151 (N.D. W.Va.); and (7) lessor(s) with leases containing a binding arbitration provision, a venue provision requiring suit to be brought outside of West Virginia, or a choice of law provision requiring the application of substantive law of any state other than West Virginia.

Glover v. EQT Corp., Case No. 5:19cv223 (N.D.W. Va.), at ECF No. 456. This Court has reviewed "Exhibit 1" from Glover, which was an excel sheet containing a wide variety of lease language. See id. at ECF No. 383-2. It is clear, therefore, as Plaintiffs argue, that class certification can be appropriate when the leases at issue include different language. The class in Glover, however, is distinguishable from the proposed class here because the Glover class did not require the Court to make a legal determination with respect to each of over 66,000 leases.

Plaintiffs also cite Hopper, in which the district court approved the following class:

> All persons and entities, including their respective successors and assigns, who, since May 21, 2010, were paid or due royalties from Defendants under leases pertaining to the wells identified in Exhibit 1 located in the State of West Virginia (the "Class Leases"). Excluded from the Class are: (1) agencies of

Case 1:21-cv-00119-TSK   Document 133   Filed 09/26/25   Page 17 of 20   PageID #: 2176

BRAXTON MINERALS V. ANTERO                                    1:21-CV-119

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART MOTION TO STRIKE AND/OR DISMISS,
STAYING DISCOVERY ORDERS, AND DENYING OBJECTIONS AS MOOT**

>   the United States of America; (2) publicly
>   traded oil and gas exploration companies; (3)
>   Defendants, their corporate affiliates, and
>   their current officers and employees; (4) any
>   person whose royalty underpayment claim
>   against Defendants is subject to a binding
>   arbitration provision.

Case No. 5:20cv101 (N.D.W. Va.), at ECF No. 483. The Hopper class, too, is distinguishable. Unlike the proposed class here, the Hopper class listed specific wells and did not require an in-depth legal analysis for each lease. Plaintiffs also argue that the proposed class is comparable to the certified class in Kay. Again, while the Kay class was broad and included different types of leases, it did not require an individualized legal analysis for each lease. See Kay Company, LLC v. EQT Production Co., No. 1:13-CV-151, 2017 WL 10436074, at *1-2 (N.D.W. Va. Sept. 6, 2017). To the extent that Plaintiffs rely on Romeo, that reliance is also misplaced. In Romeo, the Court certified a class of royalty owners whose leases contained royalty language identical to the named Plaintiffs' two leases — not "all leases." See Romeo v. Antero Res. Corp., No. 1:17cv88, 2020 WL 1430468, at *7 (N.D.W. Va. Mar. 23, 2020).

Finally, Plaintiffs write that "[t]he Cather decision . . . confirms that the identification of any lease which should be excluded from the proposed first Class in this

17

Case 1:21-cv-00119-TSK     Document 133     Filed 09/26/25     Page 18 of 20   PageID #: 2177

**BRAXTON MINERALS V. ANTERO**                                1:21-CV-119

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART MOTION TO STRIKE AND/OR DISMISS,
STAYING DISCOVERY ORDERS, AND DENYING OBJECTIONS AS MOOT**

case, . . . based upon such lease's satisfaction of the Tawney test, can be easily done, with no discernable difficulty." Resp., ECF No. 130, at 13. This Court takes a different lesson from Cather. Cather was an individual royalty action based on a single lease, not a class action. See Cather v. EQT Prod. Co., No. 1:17cv208, 2019 WL 3806629, at *1 (N.D.W. Va. Aug. 13, 2019). If anything, Cather supports striking the proposed class because the Cather Court engaged in pages of detailed analysis of particular terms and conditions in one lease, as well as evidence of the parties' intent and course of performance, before concluding that the lease did not satisfy Tawney. Id. at *1–5. To do so for over 66,000 leases, for purposes of class certification, would be inconceivable. It would amount to a mini-trial on the merits with respect to each lease. As was true in Paulino, the class determination would ultimately determine whether each royalty owner has a valid claim. See Paulino, 2014 WL 1875326, at *4.

Throughout their briefing, Plaintiffs return to the theme that class certification can be appropriate when leases contain different language. Plaintiffs are missing the point. Here, unlike in many of the cases cited by Plaintiffs, a determination as to whether every Antero lease satisfies Wellman and Tawney would require the Court to engage in extensive, individualized legal

Case 1:21-cv-00119-TSK    Document 133    Filed 09/26/25    Page 19 of 20   PageID #: 2178
**BRAXTON MINERALS V. ANTERO**                                                  1:21-CV-119

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART MOTION TO STRIKE AND/OR DISMISS,
STAYING DISCOVERY ORDERS, AND DENYING OBJECTIONS AS MOOT**

analysis for each lease. See Kellam, 875 S.E.2d at 227 (stating that the determination of whether a lease satisfies Tawney "is a matter of contract interpretation, and will necessarily hinge upon the individual contract at issue"). The proposed class is not readily identifiable. Accordingly, to the extent that Antero moves the Court to strike the proposed class, the motion is granted.

Two discovery disputes are currently pending for the Court's consideration. The parties' disagreements relate, in large part, to the proposed class that the Court has now struck. Accordingly, the Court hereby stays the relevant discovery orders by the Magistrate Judge and denies as moot the objections thereto. The Court also denies as moot the motion to stay the Magistrate Judge's order regarding the second motion to compel. The parties are granted leave to refile any motions to compel discovery pertaining to the alternative proposed class. The Court recognizes that on April 7, 2025, the parties filed a *Joint Submission Regarding Proposed Schedule and Request for Status Conference*. The Court will separately enter a new scheduling order.

### IV. CONCLUSION

For the reasons discussed above, the Court **ORDERS** as follows:

- Antero's motion to strike and/or dismiss is **GRANTED IN PART** and **DENIED IN PART** [ECF No. 129];

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART MOTION TO STRIKE AND/OR DISMISS, STAYING DISCOVERY ORDERS, AND DENYING OBJECTIONS AS MOOT**

- To the extent that Antero moves to strike, the motion is **GRANTED**;

- The first proposed class [Fourth Am. Compl., ECF No. 127, at ¶ 1], is **STRICKEN** from the fourth amended complaint;

- To the extent that Antero moves to dismiss claims regarding the Davis Lease, the motion is **GRANTED**;

- All claims with respect to the Davis Lease are **DISMISSED WITH PREJUDICE**;

- The remainder of Antero's motion to dismiss is **DENIED**;

- The Magistrate Judge's discovery orders are **STAYED** [ECF Nos. 92, 115];

- The objections to the discovery orders are **DENIED AS MOOT** [ECF Nos. 97, 116]; and

- The motion to stay the Magistrate Judge's order regarding the second motion to compel is **DENIED AS MOOT** [ECF No. 117].

The Clerk is directed to transmit copies of this Memorandum Opinion and Order to counsel of record.

DATED: September 26, 2025

*Tom S Kleeh* (signature)

THOMAS S. KLEEH, CHIEF JUDGE
NORTHERN DISTRICT OF WEST VIRGINIA